THE STATE EX REL. HOG HAVEN FARMS, CITY OF ST. LOUIS, VICTOR J. MILLER, Mayor, and ROBERT B. BROOKS, Director of Streets and Sewers, of City of St. Louis, v. CLAUDE O. PEARCY, Judge of Circuit Court of Eighth Judicial Circuit.—41 S. W. (2d) 403.

Court en Banc, July 29, 1931.

*Julius T. Muench, Oliver Senti, Jourdan & English, Whitnel & Browning* and *J. R. McMurdo* for relators.

*Foristel, Mudd, Blair & Habenicht* for respondent.

564

ATWOOD, C. J.—This is an original proceeding by the State of Missouri at the relation of Hog Haven Farms, Inc., a corporation, the City of St. Louis, a municipal corporation, Victor J. Miller, Mayor of the city of St. Louis, and Robert B. Brooks, Director of Streets and Sewers of the city of St. Louis, to prohibit Honorable Claude O. Pearcy, Judge of the Circuit Court of the Eighth Judicial Circuit of the State of Missouri, from keeping in force or enforcing a certain injunction order issued by him, or punishing relators or any of them as for a contempt should said injunction order be violated. Our provisional rule issued on relators' amended petition, respondent filed return and answer thereto, and relators filed reply. Relators also filed motion for appointment of special commissioner to hear and try issues of fact raised by the pleadings. This motion was overruled, and the cause now stands on the issues of law raised and facts conceded by the pleadings.

On this submission we understand relators' chief contention to be that the order in question is in excess of respondent's jurisdiction because not warranted by the allegations of plaintiffs' petition upon which it was issued.

Replying thereto counsel for respondent say: "Prohibition cannot be made a substitute for a demurrer to a petition or a means of correcting errors of trial courts. It involves questions of jurisdiction only." This may be conceded, but the question thus raised by relators is one of jurisdiction. As said in State ex rel. v. Wood, 155 Mo. 425, 445, 56 S. W. 474 (quoted with approval in State ex rel. Hyde v. Westhues, 316 Mo. 457, 469, 290 S. W. 443):

"Whether the circuit court was without jurisdiction altogether, or having jurisdiction of the class of cases in which the injunction was sought it exceeded its jurisdiction, is only ascertainable in this case by the averments in the bill filed in that court and the orders made thereon. The fact that said court was a court of general equity jurisdiction and has the power to issue or direct writs of injunction to issue, will not of itself answer the contention made in this case. Courts of equity are not invested with power to enjoin in any and every case, but there must be some special circumstances

bringing the case under some recognized head of equity jurisdiction before it will wield the powerful writ of an injunction."

Respondent's order here in question was issued February 17, 1930, in a certain case then pending before him entitled H. C. Koenig et al. v. Hog Haven Farms, Inc., et al., after notice and hearing at which all defendants except Hog Haven Farms, Inc., appeared. The order provided that "defendants and each of them, their officers, representatives, servants, agents and employees, be enjoined and restrained from transporting to and depositing, feeding, collecting or spreading upon the ground upon premises known as 'Hog Haven Farms,' garbage and refuse, or any part thereof, from the city of St. Louis, and that said defendants and each of them, their officers, representatives, servants, agents and employees, be enjoined and restrained from depositing said garbage and refuse from the city of St. Louis, Missouri, upon or about the premises known as 'Hog Haven Farms.' It is further ordered by the court that the restraining order, heretofore made and issued herein, remain in full force and effect in the meantime." The restraining order referred to was issued without notice to defendants on February 13, 1930, the same day petition therefor was filed. It provided that "defendants, and each of them, their officers, representatives, servants, agents and employees be enjoined and restrained from transporting to and depositing, feeding, collecting or spreading upon the ground upon premises known as 'Hog Haven Farm' garbage and refuse, or any part thereof from the city of St. Louis, and that said defendants, and each of them, their officers, representatives, servants, agents and employees be enjoined and restrained from depositing said garbage and refuse from the city of St. Louis, Missouri, upon or about the premises known as 'Hog Haven Farms,' and that said defendants be enjoined and restrained from the doing of any act or actions culminating in or creating the alleged nuisance; that defendants, and each of them, their officers, representatives, deputies, agents, servants and employees be temporarily enjoined and restrained from creating and continuing the alleged nuisance until a final hearing can be had in the above-entitled cause."

The defendants named in said suit and referred to in the above orders are Hog Haven Farms, Inc., a corporation, the City of St. Louis, a municipal corporation, Edwin R. Kinsey, J. R. Rilliet, Jr., Edward H. Steininger, Harry L. Salisbury and Robert B. Brooks, members of and constituting the Board of Public Service of the City of St. Louis, Missouri, Victor J. Miller, Mayor of the city of St. Louis, Missouri, and Louis Nolte, Comptroller of the city of St. Louis, Missouri. It appears from the uncontroverted pleadings in the instant case that the alleged nuisance will be committed in the

State of Illinois, that defendant Hog Haven Farms, Inc., is a non-resident of the State of Missouri, and that no service was ever had upon or appearance entered by said defendant in the injunction suit. It follows, therefore, that respondent was without jurisdiction to make or enforce any injunction order against this defendant, and, insofar as the above orders purport to control it our provisional rule should be made absolute. [Lewis & Spelling on Injunctions, sec. 12, p. 19; 1 High on Injunctions (4 Ed.), sec. 33, p. 49; 1 Joyce on Injunctions, sec. 75, p. 144.]

Do the allegations of plaintiffs' petition in the injunction suit, certified copy of which is attached to petition filed in the instant proceeding, sustain the above orders as to the remaining defendants? The petition for injunction alleges that said Hog Haven Farms is located in the State of Illinois on the east bank of the Mississippi River immediately across said river from the places where the dwelling houses of certain plaintiffs are located; that said river at said point is about three-fourths of a mile in width; that certain defendants, as officers and representatives of defendant, city of St. Louis, have entered into a contract, or pretended contract, with defendant Hog Haven Farms, Inc., for the disposal of the garbage of said city beginning February 20, 1930, and continuing therefrom for a period of five years, and that all of the defendants in carrying said contract into execution and disposing of the garbage of the said city of St. Louis thereunder will, unless restrained and enjoined, "collect all the garbage and refuse of the said city of St. Louis in the said city of St. Louis, and deliver the same at a dock, known as the Chouteau Avenue Dock, on the said Mississippi River, in the said city of St. Louis, Missouri, at or near the foot of Chouteau Avenue, where said garbage and refuse will be loaded on barges and barged and transported, by means of barges and power boats, down the said Mississippi River to the said premises known as Hog Haven Farms; that said garbage and refuse, which will consist of about two hundred thousand pounds or more daily, will be at said premises of Hog Haven Farms unloaded from said barges on said tract of land, comprising twelve hundred acres or more, on the premises of said Hog Haven Farms, and that thereupon the defendant Hog Haven Farms, Inc., by and through its agents, servants and employees, will, unless restrained and enjoined, deposit and maintain said garbage and refuse on said premises, known as Hog Haven Farms, and will there feed the same to said large number of hogs, consisting of ten thousand or more, kept, maintained and controlled by the defendant Hog Haven Farms, Inc., on said premises known as Hog Haven Farms, as aforesaid, and said garbage and refuse will accumulate and remain on said premises known as Hog Haven Farms, as aforesaid, where said hogs will feed upon, live and wallow

in, and mingle with said garbage and refuse and where said hogs will there on said hog farm or hog ranch, as aforesaid, deposit their dung and excrement in and with said garbage and refuse; that said garbage and refuse, in and of itself, and by being so, as aforesaid, fed to and mingled with about said hogs, as aforesaid, and deposited and mixed with the said dung and excrement, as aforesaid, there on the ground on said hog farm or hog ranch, as aforesaid, will ferment and rot and constitute offal and carrion and refuse and waste and obnoxious matter, and will create a noisome and obnoxious stench and odor, which will permeate and pollute the atmosphere at said place and for miles about and around said place, where said garbage is deposited and fed, as aforesaid; that offensive smells, fumes and odors will be created by and given off from said garbage, refuse, offal, carrion and obnoxious matter, as aforesaid, injurious and dangerous to the health and lives of persons, particularly these plaintiffs, and others similarly situated and affected, residing in and near the vicinity of said hog farm or hog ranch, known as Hog Haven Farms, as aforesaid; that said garbage, refuse, hog dung and excrement, as aforesaid, deposited there on the ground on said hog farm or hog ranch, as aforesaid, will ferment and rot and develop disease-producing germs, larvae, flies, mosquitoes and other disease-bearing insects, which, together with the fumes, odors, stenches and smells, as aforesaid, will constitute and create a nuisance there on said hog farm or hog ranch and premises, known as Hog Haven Farms, as aforesaid, and the said disease-producing germs, larvae, flies, mosquitoes and other disease-bearing insects, as aforesaid, together with the fumes, odors, stenches and smells, as aforesaid, will enter and infest, and infect the dwelling houses and homes of these plaintiffs and their families, which are near and in close proximity to said hog farm or hog ranch, known as Hog Haven Farms, as aforesaid, and will enter and infest and infect the dwelling houses and homes of others living near to and in the vicinity of said Hog Haven Farms, and will endanger and be harmful to the' health and lives of these plaintiffs, and others in the vicinity of said Hog Haven Farms, similarly situated and affected, and will render impossible the comfortable habitation of the homes and the useful and rightful enjoyment of the property of these plaintiffs, and others similarly situated and affected; that the said nuisance will be a menace to the health, happiness and enjoyment of the plaintiffs and their families in their homes, and will greatly impair the value of the said property, dwelling houses and homes of these plaintiffs, and said nuisance will be a menace to the health, happiness and enjoyment of others living in the vicinity of said Hog Haven Farms, and in close proximity thereto; and plaintiffs state that they have no adequate remedy at law.''

The petition thus sufficiently pleads a threatened nuisance such as was enjoined. It will be noted, however, that the acts creating the alleged threatened nuisance will, according to the foregoing allegations, be committed in the State of Illinois and then only by the Hog Haven Farms, Inc. Consequently, these allegations standing alone would not be sufficient to support the injunction orders issued by respondent against the remaining defendants. But they do not stand alone. The petition further alleges that said contract entered into for the disposal of said garbage is illegal and void for the following reasons:

:"That Ordinance No. 37985 of the city of St. Louis, Missouri, which authorized and directs the Board of Public Service to provide by contract for the disposal of garbage of the city of St. Louis, provides, among other things, that the contract shall provide that the contractor shall receive from the city at suitable places or receiving stations, all garbage delivered to the contractor by the city or its agents, transport and dispose of the garbage thus tendered, and shall furnish all necessary tools, labor and machinery in the performance thereof, all in accordance with requirements, conditions, plans and specifications adopted and approved by the Board of Public Service before bids are advertised therefor; and plaintiffs state that in pursuance to said ordinance the said Board of Public Service, before bids were advertised to contract for the disposal of said garbage, promulgated certain specifications, providing, among other things, that:

" 'The contractor shall maintain an office in the city of St. Louis where legal notice may be served and, during the hours of delivery of garbage at the city's dock, shall retain an employee at said dock who shall be an authorized agent of the contractor.

" 'The Contractor shall keep a suitable number of laborers on the barges loaded or being loaded to see that the barges are properly "dressed" and the load is so deposited that the barges will ride on an even keel.

" 'The contractor must have at his disposal and subject to call at least two power boats capable of handling the required barge fully loaded.

" 'The contractor must have at his disposal and subject to call at least four barges of not less than five hundred tons capacity per barge. Such barges must be constructed with cargo boxes of sufficient capacity to prevent the garbage from slipping into the river.

" 'The contractor must have had river experience or have at his disposal an organization which is capable of handling river transportation.

" 'The contractor must have at his disposal a location not objectionable to the county, state and federal authorities, and satisfactory to the Board of Public Service.'

"And plaintiffs state that said contractor, or pretended contractor, the defendant Hog Haven Farms, Inc., did not, and does not, maintain an office in the city of St. Louis where legal notice may be served, and did not and does not retain an employee at the city's dock, who was or is an ·authorized agent of the. said contractor, or pretended contractor; and said contractor, or pretended contractor, the. defendant Hog Haven Farms, Inc., was, is, and will continue to be, unable and incapable to keep a suitable number of laborers on the barges loaded, or being loaded, or to be loaded, to see that the barges are properly dressed and the load is so deposited that the barges will ride on an even keel; and said contractor, or pretended contractor, the defendant Hog Haven Farms, Inc., did not have, will not have, cannot have, and will be unable and incapable to have at its disposal and subject to call, at least two power boats capable of handling the required barge fully loaded; and said contractor, or pretended contractor, the defendant Hog Haven Farms, Inc., did not have, has not, will not have, and will be unable and incapable to have, at its disposal and subject to its call, at least four barges of not less than five hundred tons capacity per barge, constructed with cargo boxes of sufficient capacity to prevent the garbage from slipping into the river; that said contractor, or pretended contractor, the defendant Hog Haven Farms, Inc., did not have, has not, will not have, and will be unable and incapable to have river experience, or have at its disposal an organization which is capable of handling river transportation; that said contractor, or pretended contractor, the defendant Hog Haven Farms, Inc., has not, did not have, and will not have, and is unable and incapable of having at its disposal a location not objectionable to the county, state and federal authorities. But, on the contrary, plaintiffs state that the said location and premises and place where said Hog Haven Farms was located at the times herein mentioned, and where the said Hog Haven Farms is now, and will in the future be, located, and where said garbage is proposed to be and will be deposited, as aforesaid, unless the defendants are restrained and enjoined, was and is objectionable to the county, state and federal authorities.

"And plaintiffs further state that said Ordinance No. 37985 of the city of St. Louis, Missouri, and hereinabove mentioned and referred to, further provides that the defendant, the Board of Public Service, before the awarding of the contract in said ordinance authorized, shall require the best bidder to file with the said board, within ten days after the opening of the said bids, such plans and detailed specifications of the machinery and all other appurtenances

necessary for the complete equipment and operation of the plant, receiving stations, system of transportation and such other data and information as will enable the said board to determine whether the said bidder can properly comply with the contract throughout its entire term; and plaintiffs state that the said defendant, the Board of Public Service, before the awarding of the contract, or the pretended contract, hereinabove mentioned and referred to, did not require the bidder, defendant Hog Haven Farms, Inc., to file with the said board within the time specified in said ordinance, such plans and detailed specifications of the machinery and all other appurtenances necessary for the complete equipment and operation of the plant, receiving stations, system of transportation, and such other data and information as would have enabled the said board to determine whether or not the said bidder, the defendant Hog Haven Farms, Inc., could or can properly comply with the contract throughout its entire term.

"That said contract, or pretended contract, between the defendant, the city of St. Louis, and the defendant Hog Haven Farms, Inc., as aforesaid, for the disposal of said garbage of the city of St. Louis, and the act promised and proposed to be carried out thereby, is of an illegal, wrongful and evil tendency, in that it is proposed and intended by said contract, or pretended contract, to create and continue a nuisance, to-wit, a garbage-dump hog-ranch, to be conducted and maintained in the manner as in this petition described, and in such a way as to give off noisome and obnoxious smells, odors and stenches, in large quantities, and so as to develop disease-producing germs in masses of fermenting garbage and manure and also larvae, flies, mosquitoes and other disease-bearing insects in such close proximity to thickly-settled communities and inhabited areas as to annoy, vex, discommode, menace, harm and affect the rights enjoyed by the inhabitants of the community and vicinity of said garbage dump and hog ranch and those living within and likely to come within the sphere of its operation, particularly these plaintiffs and their families."

The above allegations of illegal acts are to be considered as preliminary to and in conjunction with the following allegations:

"That the defendant Victor J. Miller, as Mayor, and the said defendant Louis Nolte, as Comptroller, and the defendants Edwin R. Kinsey, J. L. Rilliet, Jr., Edward H. Steininger, Harry L. Salisbury and Robert B. Brooks, as members of and constituting the Board of Public Service of the City of St. Louis, and the said defendant the city of St. Louis, acting by and through its said officers and agents, conspired with the said defendant Hog Haven Farms, Inc., acting by and through its duly authorized officers and agents, in entering into said contract, or pretended contract, between the de-

fendant the city of St. Louis, and the defendant Hog Haven Farms, Inc., as aforesaid, for the disposal of said garbage of the city of St. Louis, and in pursuance of said conspiracy did promise, propose and agree to do and carry into effect an illegal, wrongful and evil act, in that said defendants acting in common, proposed and intended by said contract, or pretended contract, to do certain acts which would culminate in creating and continuing a nuisance, to-wit, the transportation of the garbage and refuse of the said city of St. Louis, from the said city of St. Louis, down the Mississippi River a distance of about two miles from the dock at the foot of Chouteau Avenue in said city of St. Louis, to the said premises, of the defendant Hog Haven Farms, Inc., and the dumping and depositing of said garbage and refuse on the ground there on the said premises of the said Hog Haven Farms, and the spreading of said garbage and refuse over the ground there, and the feeding of said garbage to, and the mingling of same with, thousands of hogs there on said Hog Haven Farms, in such a way as to develop disease-producing germs in masses of fermenting garbage and manure, and also larvae, flies, mosquitoes and other disease-bearing insects, and so that said garbage and refuse deposited and spread over the ground there on said Hog Haven Farms, as aforesaid, would give off and exude obnoxious, offensive and noisome smells, odors, stenches, fumes and poisonous gases in large quantities, which would permeate and pollute the air there and be carried to the homes and into the dwellings of these plaintiffs and others, and infest and infect said homes and dwellings and annoy, vex, endanger, menace, harm and affect the health and lives of, and the rights enjoyed by those living within and likely to come within the sphere of the operation of said Hog Haven Farms and said nuisance, and particularly these plaintiffs and their families; and that by carrying said contract into execution as proposed, all of the defendants herein are, and will be, acting in common and all engaged in violating the rights of these plaintiffs by their acts culminating in, and producing, a nuisance injurious to the person and property of these plaintiffs.''

Said petition further alleges that ''all the defendants herein knew at the time of entering into said pretended and illegal contract, and before said pretended and illegal contract was entered into, and now know that the defendant Hog Haven Farms, Inc., was, and is, unable and incapable of carrying out the terms of said contract or pretended contract, and that said defendant Hog Haven Farms, Inc., has heretofore, by legal proceedings, been prevented and enjoined and restrained from operating said Hog Haven Farms in a manner similar to that proposed by said contract, or pretended contract, on the ground and for the reason that it thereby had created and was continuing a nuisance; that all of the defendants herein

know, and at the time of entering into said pretended contract, and theretofore, knew that the proposed removal of the garbage from the city of St. Louis, Missouri, and the dumping and depositing of the same on the land now comprising what is known as Hog Haven Farms in St. Clair County, Illinois, and the feeding of said garbage to hogs at said place, was objectionable to the authorities of said St. Clair County, Illinois, and to the citizens and inhabitants thereof, and that a number of hog ranches and garbage-feeding hog farms have been enjoined and restrained in said St. Clair County within the two years last past; and knew that said garbage-dump hog ranch on the premises known as Hog Haven Farms, was, would become, and would continue to be, a nuisance *per se*, and that said proposed and pretended contract could not be legally and lawfully carried out in the manner proposed.''

Said petition further alleges that the land comprising said Hog Haven Farms is unsuitable for a garbage-feeding hog ranch; that defendant Hog Haven Farms, Inc., has been and is now operating said hog ranch on a small scale and that the same has been and is a nuisance objected to by the inhabitants of the state of Illinois coming in contact therewith, which facts were known to all of the defendants herein at the time contract was entered into.

Plaintiff's prayer is that they have ''judgment in this action against all of the defendants and that they and each of them, their officers, representatives, servants, agents and employees be enjoined and restrained from performing and carrying into execution said contract to so, as aforesaid, dispose of said garbage and refuse of the city of St. Louis, as aforesaid, and that the defendants, and each of them, and their officers, representatives, servants, agents and employees be enjoined and restrained from transporting to, and depositing, feeding, collecting or spreading upon the ground upon said premises known as Hog Haven Farms, as aforesaid, said garbage and refuse, or any part thereof, from the city of St. Louis, and that said defendants, and each of them, and their officers, representatives, servants, agents and employees be enjoined and restrained from depositing said garbage and refuse from the city of St. Louis, Missouri, upon or about the premises known as Hog Haven Farms, as aforesaid, and be restrained and enjoined from the doing of any act or acts culminating in or creating said nuisance, and for such other and further orders herein as from time to time will relieve the plaintiffs and the community in which they reside from the ill effects resulting from said nuisance, and that a temporary restraining order may be issued against the defendants, and each of them, their officers, representatives, deputies, agents, servants and employees, restraining and enjoining them from creating and continuing the said nuisance until a final hearing can be had in this case, and upon

such final hearing said temporary injunction be made permanent and perpetual, and that the plaintiffs be granted all orders and relief herein as to the court may seem necessary, and for their costs herein expended.''

We have quoted at length from plaintiffs' petition because certain allegations, particularly those charging a conspiracy between Hog Haven Farms, Inc., and other defendants, must be considered in ruling relators' contention first above noted.

. While plaintiffs' cause of action is an alleged threatened injury and not a conspiracy, the effect of the conspiracy charge, if properly pleaded, would be to give plaintiffs a remedy against defendants not otherwise connected with the alleged wrong. [Cooley on Torts (2 Ed.) p. 143; Remmers v. Remmers, 217 Mo. 541, 555, 117 S. W. 1117; Darrow v. Briggs, 261 Mo. 244, 276, 277, 169 S. W. 118; Holt v. Williams et al., 210 Mo. App. 470, 477, 240 S. W. 836.]

In Harelson v. Tyler, 281 Mo. 383, 399, 219 S. W. 908, we have defined a civil conspiracy as a combination of two or more persons to accomplish, by concerted action, an unlawful or oppressive object; or a lawful object by unlawful or oppressive means. The principle which determines whether the object sought to be effected by two or more persons acting in concert is legal or illegal is thus clearly stated in National Fireproofing Co. v. Builders Assn.; 169 Fed. 259, quoted with approval in the Harelson case:

''The direct object or purpose of a combination furnishes the primary test of its legality. It is not every injury inflicted upon third persons in its operation that renders a combination unlawful. It is not enough to establish illegality in an agreement between certain persons to show that it works harm to others. An agreement entered into for the primary purpose of promoting the interest of the parties is not rendered illegal by the fact that it may incidentally injure third persons. Conversely, an agreement entered into for the primary purpose of injuring another is not rendered legal by the fact that it may incidentally benefit the parties. As a general rule it may be stated that, when the chief object of a combination is to injure or oppress third persons, it is a conspiracy; but that when such injury or oppression is merely incidental to the carrying out of a lawful purpose, it is not a conspiracy. Stated in another way: A combination entered into for the real malicious purpose of injuring a third person in his business or property may amount to a conspiracy and furnish a ground of action for the damages sustained, or call for an injunction, even though formed for the ostensible purpose of benefiting its members and actually operating to some extent to their advantage; but a combination without such ulterior oppressive object, entered into merely for the purpose of

promoting by lawful means the common interests of its members, is not a conspiracy.''

If plaintiffs' plea of conspiracy were limited to the purpose and intent of the garbage contract it might be that we could, as counsel for relators apparently assume, treat the contract, copy of which was attached to plaintiffs' petition and which is also referred to and set forth in respondent's answer and return in the instant case, as speaking for itself and showing nothing but a lawful object sought to be reached by lawful means. But the pleading is not so limited. It also charges that defendant members of the Board of Public Service of the City of St. Louis, and defendant city of St. Louis, ''conspired with the said defendant Hog Haven Farms, Inc., . . . in entering into said contract, or pretended contract, . . . and in pursuance of said conspiracy did promise, propose and agree to do and carry into effect an illegal, wrongful and evil act, in that said defendants acting in common, proposed and intended by said contract, or pretended contract, to do certain acts which would culminate in creating and continuing a nuisance, to-wit,'' etc. Defendants are also charged with certain acts, both of omission and commission, and circumstances are pleaded, the truth and effect of all of which cannot be determined as a matter of law from the terms of said written contract. Notwithstanding the petition contained some irrelevant matter, it seems clear that a conspiracy was sufficiently pleaded and respondent was not without jurisdiction to consider it as well as other issues properly joined. All defendants, except Hog Haven Farms, Inc., joined issue by their returns, appeared and were heard before the order in question was made pending a final hearing. We cannot say that respondent's order is beyond the scope of the pleadings in the injunction suit, and relators' contention on this point is overruled.

Counsel for relators next assert that on an application for an injunction it is the duty of the court to take into consideration the injury or inconvenience likely to result to the public in case an injunction is granted, and to refuse it if the benefit to plaintiffs does not outweigh the inconvenience to the public, citing 32 C. J. 81; Johnson v. Railroad, 227 Mo. 423, 450, 127 S. W. 63; Horine v. Peoples Sewer Co., 200 Mo. App. 233, 237, 204 S. W. 735; and Steinmetz v. Federal Lead Co. (Mo. App.), 176 S. W. 1049, 1051. This doctrine is well recognized and should have great weight with the chancellor. As said in the Johnson case, supra, ''it is self-evident that the public convenience and public mischief may mark the distinction between sound and unsound discretion in granting an injunction on the facts pleaded.'' It is without application, however, in a proceeding to pro-

hibit the chancellor acting within his jurisdiction because his discretion cannot be so controlled.

It is also urged in relators' behalf that equity will not enjoin an anticipated nuisance unless it clearly appears that such nuisance is bound to result from the acts of the defendant sought to be enjoined. This, too, is well established law fully discussed in Aufderheide v. Polar Wave Ice & Fuel Company, 4 S. W. (2d) 776, 786, 319 Mo. 337, and other cases cited by relators. As said in Wood on Nuisances (3 Ed.) Section 797: "Injunctions against *threatened* nuisances will seldom be granted except in extreme cases where the threatened use of property is clearly shown to be such as leaves no doubt of its injurious results." However, as we have already observed, prohibition will not be substituted for a demurrer to the petition or used to control the discretion of a chancellor acting within his jurisdiction.

The same may be said of relators' further claim that right acting on the part of public officials is presumed. It is for the chancellor, having jurisdiction of the subject-matter and parties, to determine on the pleadings and proof to what extent this presumption shall obtain. Nor is relators' companion claim that, "a court cannot enjoin the city officials from entering into or performing such contract on the ground that the contractor with the city has in the past or will in the future maintain a nuisance," decisive of the case, because it ignores plaintiffs' allegations of a conspiracy between the contractor and other defendants.

Counsel for relators also insist that the disposal of garbage by the city is a governmental function, which may not be enjoined by the courts at the suit of private persons, citing 43 C. J. 958, 959; Behrmann v. St. Louis, 273 Mo. 578, 201 S. W. 547; State ex rel. v. Sedalia, 241 S. W. 656, 657 (Mo. App.); and Gibson v. Baton Rouge, 161 La. 637, 47 A. L. R. 1151, 1152. With the exception of the Louisiana case, which apparently departs from the general rule, these authorities do not support the proposition here advanced. In 43 Corpus Juris, section 1735, pages 958 and 959, the prevailing doctrine is thus stated:

"A municipality which, in the performance of the work of collecting and removing garbage and other refuse, creates a nuisance is liable to persons suffering special injury therefrom, regardless of any act of negligence on its part; and in a proper case an injunction will issue."

To the same effect is the Sedalia case, supra; also, Edmondson v. City of Moberly, 98 Mo. 523, 11 S. W. 990; and Smith v. Sedalia, 152 Mo. 283, 302, 53 S. W. 907. In defining "special injuries" it is said in Wood on Nuisances (3 Ed.) Section 605:

"A person residing, or having a place of business, within the immediate sphere of such a nuisance sustains injuries, which the rest of the public, who merely suffer an annoyance when casually coming in contact with it, do not sustain. Persons owning property within the sphere of the nuisance sustain that damage which is incident to the deterioration of property in such localities and from such causes, and those residing or doing business there are subjected to a degree of annoyance and personal discomfort which is far in excess of that sustained by other members of the public. To them, and each of them, no matter how numerous, the nuisance is *private* as well as public. It inflicts upon them, in all respects, all the injury requisite to enable them to maintain an action; and the fact that more persons. are similarly situated in reference to the same nuisance in no measure operates to deprive them of their remedy."

Also, same authority, Sections 16 and 608; Joyce on Nuisance, sec. 13a; Edmondson v. Moberly, supra; Givens v. Van Studdiford, 86 Mo. 149, 158; and Newman v. Marceline, 6 S. W. (2d) 659, 660, 222 Mo. App. 980. Nor is it of any consequence here, in view of relators' charge of conspiracy, that all defendants were not served and all did not appear and defend. [Givens v. Van Studdiford, supra, and Powers v. Ry., 169 U. S. 92.] The Behrmann case, cited by relators, was a negligence case without reference to injunction and is, therefore, not in point.

Relators' further contention that the city is not liable for the contractor's acts again overlooks plaintiffs' conspiracy charge, and it cannot be regarded in this proceeding.

Relators' claim that respondent's order here in question was made without notice is disproved by the undisputed record which shows that prior to February 17, 1930, the date it was issued, notice was given and all defendants, except Hog Haven Farms, Inc., appeared and participated in a hearing before respondent which lasted for several days. Consequently, the case of State ex rel. v. Dearing, 291 Mo. 169, 236 S. W. 629, cited by relators is not in point.

Touching relators' suggestion of an ulterior motive in the case, which is the final point presented, it is enough to say that this question, too, is for the chancellor's determination. It does not go to the matter of jurisdiction and cannot be considered in this proceeding.

For the reasons above stated our provisional rule heretofore issued is discharged, except in its application to respondent's said injunction order insofar as the latter purports to restrain defendant Hog Haven Farms, Inc., in which respect said rule is made absolute. All concur, except *Henwood* and *Ellison, JJ.*, not sitting.