WALTER T. JOHNSON v. INDEPENDENT SCHOOL DISTRICE No. I, BUF-FALO, MISSOURI.—199 S. W. (2d) 421.

Springfield Court of Appeals. January 11, 1947.

*Charles Farrar* and *W. I. Mayfield* for appellant.

*James P. Hawkins* and *Theo. G. Scott* for respondent.

FULBRIGHT, P. J.—This is a suit in equity wherein, in the course of our opinion appellant, Walter T. Johnson, an individual, will be referred to as plaintiff and the Independent School District No. I, of Buffalo, Missouri, Restpondent, will be reverred to as defendant.

Plaintiff seeks to enjoin defendant from allowing its septic tank, used in connection with the school buildings, from overflowing on plaintiff's land which lies adjacent to defendant's premises. Plaintiff contends that the overflow from the septic tank damages a considerable portion of his land and that this condition has existed for a number of years.

Defendant, for answer, alleged that it was a consolidated school district located in the City of Buffalo, Missouri; that the septic tank in question was one built as a part of the school building and used to help carry on said school of several hundred pupils; that the septic tank was constructed under the supervision of the said Board of Health of the State of Missouri and so approved by it; that said tank is of a permanent nature and has so been since the year 1939. Defendant denies any overflow but states that if there is any overflow from the septic tank upon the land of plaintiff that said condition has existed since 1939 and has resulted in an act of appropriation by the school district of the lands so used; that the plaintiff has an adequate remedy at law for damages for any and all property that might

be appropriated; that injunction against defendant would greatly impair the life and efficiency of the school and would greatly impair the health of the several hundred students attending the school.

Upon the written consent of all parties the Honorable L. CUNNINGHAM, of Bolivar, Missouri, was, by the Court, duly appointed Referee to hear the case. The Referee, after hearing, recommended to the court that the petition be dismissed. No objection to the Referee's Report was filed by plaintiff within the time required by law so to do, and thereafter the court, upon examination of the Report of the Referee as well as all evidence taken, dismissed the petition. Judgment was rendered accordingly from which plaintiff duly appeals.

The finding of facts by the learned Referee has been adopted by both plaintiff and defendant. His finding fairly presents the facts, therefore we adope same and set it out as follows: .

"The plaintiff filed his petition in the Circuit Court of Dallas County, Missouri, June 12, 1944, under which he seeks to enjoin the defendant from causing and permitting water and filth from its. septic tank to flow onto, over and across the plaintiff's land.

"The defendant is a public school district, and through its board of education, on the 12th day of April, 1945, filed its amended answer herein, and defends upon the grounds that, in the year 1939, at great expense, constructed upon its premises a certain grade school building and a large septic tank connected with many thousands of feet of tile; that said septic tank was constructed under the supervision of the State Board of Health and approved by it; that said septic tank is of a permanent nature and is connected with the restrooms in defendant's school buildings, and that an injunction would greatly impair the life and efficiency of its school and the health of several hundred students "therein, and that the plaintiff has an adequate remedy in an action at law for damages. The defendant denies that any overflow from its septic tank reaches the plaintiff's land, or if any of it reaches said land, that it is foul and dirty and emits disagreeable odors and is injurious to plaintiff's land.

"I find from the pleadings, admissions and evidence that the plaintiff's mother, Rebecca Johnson, at the time of her death in 1915, was the owner of the land involved in this action; that she willed it to her husband for his natural life in trust for their seven children; that her said husband died in January or February, 1941, and that each of said children thereupon became the owner in fee of an undivided one-seventh interest in said land, and that partition thereof among them was made in April, 1944, and the plaintiff thereupon because the owner thereof in fee; that said land consists of thirty-one acres and was, prior to the installation of said septic tank, suitable and valuable for agricultural purposes, and also for sites for homes.

"I further find that the defendant in the year 1938 or 1939, was and now is the owner of five acres lying immediately east and north

of plaintiff's land, and used the same as a site for its school buildings and for its septic tank and lines of tile connecting therewith through which sewage from said septic tank flows; that the defendant, in 1939, constructed a septic tank on its premises and connected it with its school buildings, and extended therefrom twelve lines of tile set eight feet apart and reaching from said septic tank in a westward direction to within three feet of the line between the respective properties of the plaintiff and defendant; that said septic tank and lines of tile were constructed under the supervision of the State Board of Health and approved by it; that there is no evidence that they were negligently constructed, or negligently used by the defendant.

"I find that the defendant's land slopes gradually from its buildings to the plaintiff's land, and that plaitniff's land slopes gradually therefrom westward to a branch which flows across plaintiff's land in a northwesterly direction; that filthy water seeps and flows from the west end of said lines of tile into, "upon, over and across a strip of plaintiff's land from fifty to seventy-five feet wide and from five hundred to six hundred feet, extending from the east line of plaintiff's land to said branch, and that it made, and now makes said strip of land wet, mirey and soggy, and offensive odors rise therefrom, and makes said strip of land unsuitable for cultivation, meadow or pasture and greatly impairs its value for agricultural purposes, and also makes other parts of plaintiff's land unsuitable for sites for homes. There is no evidence of the amount of the plaintiff's damages.

"I further find that the defendant has invested in its school buildings about one hundred thousand dollars; that approximately six hundred students attend its schools for nine months of the year; that the grade school connects with said septic tank but it is not clear whether the other school buildings connect with said tank or not, although it appears that the high school building is so connected; that the defendant ordinarily uses about one hundred thousand gallons of water per month while school is in session, and that a large part of it flows through said septic tank. There is no substantial evidence that surface water from defendant's premises materially affects the amount of water passing onto, or over plaintiff's land, or that surface water from other parts of the City of Buffalo passes over or onto the strip of land described above, or contributes materially to its damage. It appears that if surface water or sewage from other parts of the city reaches plaintiff's land, it passes south of the strip complained of.

"I further find that the amount of seepage into, or flow onto plaintiff's said strip of land, from said septic tank and connecting tiles, varies from time to time according to whether school is in session, or the use of defendant's school buildings; that it has increased from year to year as the ground becomes more thoroughly saturated with water, and the use of the school property increases.

"I further find that in June, 1944, when this action was brought, the water from said septic tank and tiles was seeping "into and flowing onto, over and across the strip of land mentioned above, and made the same wet and soggy and unfit for use for agricultural purposes, and caused odors to rise therefrom, and impaired the usefulness of other parts of plaintiff's land for residential purposes, and that such conditions have continued to the present time.

"I further find that the defendant has no other feasible way to dispose of its sewage, and that to enjoin the use of said septic tank and lines of tile would cause great inconvenience and damage to the defendant and to the persons attending its school, and that such damage and inconvenience would be greatly in excess of the damages sustained by the plaitiff, and that the public interest is involved; that while the defendant has not acquired by condemnation, purchase or otherwise, the right to so use the plaintiff's land, and had no right to appropriate plaintiff's land, and had no right to appropriate plaintiff's land for such purposes without paying just compensation therefor, the amount of such compensation, if any, cannot be determined in this action."

Plaintiff concedes that "there can be no question that the learned Referee and the trial court reached the correct conclusion as a general proposition of law. However, it is earnestly argued that this is not a case of ordinary trespass." In this statement we are in complete accord. However, this is a case wherein the public health and general welfare of the community would definitely and substantially suffer if the injunction is granted; and the injury sustained by defendant and the public would grossly exceed that of plaintiff. In our opinion the comparative injury rule should apply.

It is not charged by plaintiff that the defendant negligently constructed, maintained or operated its disposal plant. Nor is defendant's good faith challenged. It is true, the defendant has not acquired by condemnation, purchase or otherwise an easement over or through plaintiff's land and had no right to appropriate the same for its purposes without first so doing and paying just compensation therefor. It had the power under the statute to condemn and still has that power, which should be exercised. There is no definite testimony as to the amount of land damaged or appropriated as a result of the operation of the defendant's disposal plant. Neither is there any evidence as to the value of the land before the defendant began the operation thereof, nor as to its value at the time the case was tried. Hence, the learned Chancellor could not mold a judgment granting compensation for the lands damaged or taken and, we regret that such compensation cannot be determined here. The general welfare of the community and public interest and convenience is seriously involved. It is undisputed that this is the only practical and feasible way of disposing of its sewage; that there is no conduit

or sewer into which the sewage might be discharged and due to the contour of the land it could not be discharged in any other direction; that to enjoin the use of the septic tank and the lines of tile leading therefrom would cause great inconvenience and damage to the defendant, thereby rendering useless its disposal plant (a permanent structure erected at great expense) and jeopardizing and imperiling the health of from 500 to 700 students attending defendant's school, and perhaps stop the operation of the school, at least temporarily.

Although there are decisions apparently to the contrary, the general rule, as supported by the weight of authorities, seems to be that when the issuance of an injunction will cause serious public inconvenience or loss without a correspondingly great advantage to the complainant no injunction will be granted. "So, while there is some authority apparently to the contrary, it is generally held that if the injunction would have the effect of greatly injuring or inconveniencing the public, it may be refused even though as against defendant the complainant would be entitled to its issuance. The general rule under consideration has been applied where the allowance of an injunction would seriously interfere with or work detriment to public works or works of public benefit, where the issuance of the injunction asked would . . . prevent the necessary disposal of sewage, . . . " [32 C. J. 81; Sec. 66; 43 C. J. S. 465, Sec. 31; State v. Pearcy, (Mo. Sup. *in Banc*) 41 S. W. (2d) 403, l. c. 409, 328 Mo. 560, l. c. 574, and cases there cited.]

Moreover, in 28 Am. Jur. 250, Sec. 54, it is stated among other things: "Injunctions are never granted when they are against good conscience, or productive of hardship, oppression, injustice or public or private mischief, . . . " [Johnson v. United Rys. Co. of St. Louis, 127 S. W. 63, l. c. 70, 71; Horine v. Peoples Sewer Co., 200 Mo. App. 233, l. c. 237, 204 S. W. 735, l. c. 736.]

It seems to be well established that whenever an injunction is asked of a court of equity in cases of this nature, or at all resembling same, it must take into consideration not only the dry, strict rights of the plaintiff and defendant, but must have regard to the surrounding circumstances—to the rights and interests of other persons which may be more or less involved, which, in the instant case, would be every citizen of the defendant school district. [Johnson v. United Rys. Co. of St. Louis, *supra*, l. c. 70, 71; Commission Row Club v. Lambert, 161 S. W. (2d) 732, l. c. 736.]

Plaintiff strenuously insists that he is within an adequate remedy at law and therefore is entitled to a mandatory injunction. It is our conclusion that the facts and circumstances in the instant case are of such a nature that the injunction should be denied irrespective of the fact that plaintiff may not have a full, complete and adequate remedy at law. While we find no case passing directly upon this question this conclusion may be inferred from the cases hereafter

cited, where it appears that the issuance or denial of an injunction is a matter that rests in the sound discretion of the chancellor and that the injunction may be denied even though plaintiff has no adequate remedy at law. "The writ of injunction is an extraordinary remedy. It does not issue as of course, but somewhat at the discretion of the chancellor. It is his duty to consider its effect upon all parties in interest, and to issue it only in case it is necessary to protect a substantial right, *and even then not against great public interests."* (Italics ours.) [Smith v. City of Sedalia, 149 S. W. 597, 1. c. 601.] "It is self-evident that the public convenience and public mischief may mark the distinction between sound and unsound "discretion in granting the injunction on the facts pleaded." [Johnson v. United Rys. Co. of St. Louis, *supra,* 1. c. 70.] "In determining which way the balance of convenience lies, the resultant benefit and detriment to the parties litigant are not the only matters to be considered. The court will also consider the injuries which may be inflicted on strangers to the suit and to the public generally." [Tanner v. Lindell Ry. Co., 180 Mo. 1, 1. c. 18, 79 S. W. 155; Bailey v. Culver, 84 Mo. 531, 1. c. 540; State v. Pearcy, *supra,* 1. c. 409; Commission Row Club v. Lambert, *supra,* 1. c. 736.]

"The comparative injury rule seems not to have found much footing in this State except where the public weal will likely substantially suffer if the injunction is granted, and where the result of such public injury is so great on the one hand as compared to the injury complained of on the other, then it would be unconscionable to grant injunctive relief, and it will be denied; (Johnson v. Railroad, *supra*) and certainly there can be no question in such circumstance when the party seeking injunctive relief has an adequate remedy at law. It is not the disparity in dollars and cents that furnishes a foundation for denying injunctive relief (Steinmetz v. Federal Lead Co., 176 S. W. (Mo.) 1049); but the immeasurable value of the health and comfort of the public on the one hand as compared to a few dollars on the other." [Horine v. Peoples Sewer Co., 200 Mo. App. 233, 1. c. 237. 204 S. W. 735, 1. c. 736.] The above quotation clearly bears out the conclusion that even though plaintiff may have no adequate remedy at law, under the facts and circumstances in this case injunction should be denied.

It is our conclusion that the learned Chancellor properly dismissed the application for injunction and his judgment is accordingly affirmed. *Blair, J.,* concurs; *Vandeventer, J.,* not sitting.