Willard I. BARBER and Lula Fern Barber, Respondents,

v.

SCHOOL DISTRICT NO. 51, CLAY COUNTY, Missouri, a Quasi-Municipal Corporation, Commonly Known as Faubion School District, and William Wittmeyer, Gerald Chester, and Raymond Moore, Directors, Appellants.

No. 22914.

Kansas City Court of Appeals.

Missouri.

May 9, 1960.

Robert F. Sevier, William E. Turnage, Liberty, for appellant.

No brief for respondents.

MAUGHMER, Commissioner.

Plaintiffs Willard I. and Lula Fern Barber, owners of adjoining real estate, filed a petition for damages and to restrain defendant School District and its Board of Directors from discharging water from defendants' sewage disposal system upon plaintiffs' land. Plaintiffs abandoned or did not prove up their claim for money damages but were granted an injunction, enjoining defendants "from discharging sewage disposal effluent on the lands of plaintiffs". The decree further recites that "Said injunction shall continue until the further order of this court". Defendants have appealed and have presented their case in this court by written brief, but without oral argument. Plaintiffs have filed no brief and offered no oral argument. It is the policy of all appellate courts to encourage briefs and oral arguments by both parties. When a litigant does not do so he loses an opportunity to aid the court in arriving at a proper decision.

■ This being an equity case, this court must decide it de novo and while

due deference should be accorded the trial court because it had the opportunity of seeing and hearing the witnesses, the responsibility is ours and it is our duty to render such a decree as we think should have been rendered in the court below. Section 510.310, V.A.M.S.; Duke et al. v. Crossfield, 241 Mo.App. 579, 240 S.W.2d 180, 182, and Jackson v. Tibbling, Mo., 310 S.W.2d 909.

Plaintiffs now own a farm of some 154 acres. Defendant School District No. 51 Clay County, Missouri, owns the remaining 6 acres of this quarter section. Prior to 1956, it owned only 2½ acres, on which stood a schoolhouse. The school population increased and in 1955, defendants bought the other 3½ acres from plaintiffs at a price of $1,000 per acre, and in 1956, constructed thereon two new schoolhouses. The old schoolhouse was thereafter used as a community building. This 6 acre school property is bounded on the north and east by public highways. The whole tract slopes from northeast to the south and west, where plaintiffs' land lies. A filter type septic tank system was constructed for disposal of water and sewage from the school buildings. Plaintiffs' 154 acre tract is used as a farm and that part adjoining the school property is in grass and has always been used as pasture.

The plaintiff Williard I. Barber testified that defendants' sewage disposal system was located some 25 feet from his property line, was a square structure, built of concrete blocks and filled with sand. He said that on top of the sand a 6 or 8 inch tile or pipe was laid with two openings on each side, and that this pipe extended to within 8 feet of his property. He stated that when the school was in operation, water from this septic tank overflowed onto his farm; that on one occasion he saw it flowing constantly for 55 minutes; that the water was noticeable in his pasture, at times for a distance of 180 feet, and at one point was 30 feet wide. Photographs showing this standing water were received in evidence. It was his testimony that the water had an offensive odor and that he had seen his cattle start to drink it and then would "turn up their noses". Mr. Barber estimated that about one-eighth acre of his low pasture ground was muddy when the school was in use, but that it continued to grow grass. He thought his access to some 2½ or 3 acres was restricted; that it would be difficult to erect a building thereon or to plow and cultivate it. He admitted that the area where the water accumulated was low ground and that surface water collected there.

Randall E. Garten, a public health engineer employed by the Clay County Department of Health, described this school sewage disposal system. He said the plans had been approved by his department; that some 190 persons used the school facilities; that the Code for Sewage Works estimates 8 gallons of water per day per person which would amount to 1,520 gallons per day for this project on school days; that this water and sewage passes into the septic tank, then through the filter bed and finally out through the laterals and discharge pipe and empties some 8 feet from plaintiffs' property line. Mr. Garten said the water when discharged was not clear but had only a slight odor and would not destroy grass. This witness on at least two occasions inspected the system and had laboratory analyses made of both the raw sewage and the effluent. He expressed the opinion that the treatment system was operating satisfactorily.

It was further defendants' evidence that the disposal system was located at the only possible site, considering the natural fall of the terrain to the southwest; that no sewers were available and that to close this sewage disposal system would result in closing the school and thereby cause great damage to the students, to the community and to the public as a whole.

The trial court filed a memorandum opinion which recites many factual findings, including the following: that surface water naturally flows from the school property to plaintiffs' lands; that defendants' sewage

system carries refuse from the school buildings into a septic tank, thence to a sand pit or basin approximately 20 feet square, and from there through a disposal pipe to within 8 feet of plaintiffs' land, where it is discharged on open ground and flows on downgrade into plaintiffs' pasture. The trial court found further that plaintiffs' lands are used only for pasture, but that some 2½ acres are thereby rendered unusable for cultivation, but are used for pasture; that such overflowing is only during school periods; that the system was constructed under plans approved by the Clay County Health Department and by the Missouri Board of Health. Additionally the court found that issuance of the injunction would greatly impair the life, efficiency and health of the school students. We think the evidence supports these findings. The trial court also declared: "The court is of the opinion that palatable grasses do not grow thereon" (the overflowed tract). Plaintiff Barber admitted the area was usable for pasture. Continuing, the trial court said: "True the injury and damage to the complainants in the enjoyment of their lands is small compared to the scope and extent of the injuries to the public if the defendant District were enjoined in the operation of its water and sewage system. This would be tantamount to enjoinment of the operation of its schools". The court then declared that this continued wetting of plaintiffs' lands is "tantamount to taking lands for public use without just compensation." Based upon the evidence here we cannot join in this last conclusion expressed by the trial judge.

■ Defendants on appeal say there was no competent evidence that plaintiffs were damaged by the discharge of "effluent water upon their lands". While the damage shown may be slight and even though the claim for damages was abandoned, we believe that the undisputed facts establish at least nominal damages.

■ Defendants also raise the question of comparative injury. We think this is the important and controlling question in the case. Simply stated, the rule or law of comparative injury, as it might be applicable here, is that where issuance of an injunction will cause serious public inconvenience or loss without a corresponding great advantage to complainant, no injunction will be granted. We list some of the authorities which announce, declare and delineate such rule.

From 43 C.J.S. Injunctions § 31, pp. 465, 466: "On an application for an injunction it is the duty of the court to take into consideration the injury or inconvenience which may result to the public if an injunction is awarded. Accordingly, while there are cases in which an injunction has been granted, ordinarily, when the issuance of an injunction will cause serious public inconvenience or loss, without a correspondingly great advantage to complainant, no injunction will be granted, and this is so, even though, as against defendant, complainant would be entitled to its issuance.

"The general rule under consideration has been applied where the allowance of an injunction would seriously interfere with or work detriment to public works or works of public benefit, where the issuance of the injunction asked would result in cutting off the public water supply, or the supply of electricity for lights and power, or where it would deprive the public of a necessary railroad, street, sidewalk, bridge, public ferry, canal, or viaduct, or *prevent the necessary discharge of sewage,* or interfere with the public system of taxation". (Italics supplied.)

And from 28 Am.Jur., Injunctions, Section 54, pp. 551, 552: "The paramount interests of the public may have some bearing on the matter of granting injunctive relief to protect private rights. The fact that an important public interest would be prejudiced by injunction may be a compelling reason for denying relief. The existence of such public interest will at least furnish a court of equity sufficient ground for exercising its discretion to refuse the remedy,

and the court would seem bound to stay its hand in the public interest, where it reasonably appears that the private right will not suffer by the refusal of the writ or order, where the damage to the complainant from denying the injunction will be slight, where the right invaded is merely a technical or unsubstantial one, or where the injury is one which can readily be compensated in damages, while the issuance of the writ or order may or would occasion public inconvenience".

The facts in Johnson v. Independent School Dist. No. 1, Buffalo, 239 Mo.App. 749, 199 S.W.2d 421, 423, 424, are quite similar to ours. There plaintiff sought to enjoin defendant School District from allowing its septic tank, used in connection with the school buildings from overflowing on plaintiff's land, which was adjacent to defendant's premises. The injunction was denied. On appeal the court said:

" * * * the injury sustained by defendant and the public would grossly exceed that of plaintiff. In our opinion the comparative injury rule should apply.

"It is not charged by plaintiff that the defendant negligently constructed, maintained or operated its disposal plant. Nor is defendant's good faith challenged. It is true, the defendant has not acquired by condemnation, purchase or otherwise an easement over or through plaintiff's land and had no right to appropriate the same for its purposes without first so doing and paying just compensation therefor. * * * The general welfare of the community and public interest and convenience is seriously involved. It is undisputed that this is the only practical and feasible way of disposing of its sewage; that there is no conduit or sewer into which the sewage might be discharged and due to the contour of the land it could not be discharged in any other direction; that to enjoin the use of the septic tank and the lines of tile leading therefrom would cause great inconvenience and damage to the defendant, thereby rendering useless its disposal plant (a perma-

nent structure erected at great expense) and jeopardizing and imperiling the health of from 500 to 700 students attending defendant's school, and perhaps stop the operation of the school, at least temporarily".

In Humphreys v. Dickerson et al., Mo., 216 S.W.2d 427, 429, an injunction case, our Supreme Court said: "It is the Chancellor's duty to consider the effect of injunction on all parties in interest. Injunction may issue to protect a *substantial* right but the public interest is to be considered".

In Rubenstein et al. v. City of Salem et al., Mo.App., 210 S.W.2d 382, 386, the court said: "In suits for such relief injunctions are rarely refused where their refusal would operate contrary to the real justice of the case and produce inequitable results. The relative convenience and inconvenience and the comparative injuries to the parties and to the public should be considered in granting or refusing an injunction".

It is our opinion that careful consideration of the evidence here, including plaintiff's abandonment of any claim for damages, leads definitely to two conclusions: First, although plaintiffs' property rights have technically been violated and infringed upon and although they have received some—at least nominal damage—they have not suffered any substantial damage. Second, granting of the injunction would result in great injury to the school, to the community and to the public. An injunction is not a writ of right, but is an appeal to conscience of Chancellor and to Chancellor's sound discretion. Bowman et al. v. City of East Prairie et al., Mo.App., 240 S.W.2d 203. The granting of injunctions is not only addressed to the sound discretion of the Chancellor, but requires application of the principles of equity under all the circumstances. We believe the doctrine of comparative injury applies here. In reaching this result in this injunction suit, we do not even indirectly approve the actions of the defendant school. As stated by the court in the Johnson case, supra,

199 S.W.2d 423: "It is true, the defendant has not acquired by condemnation, purchase or otherwise an easement over or through plaintiff's land and had no right to appropriate the same for its purposes without first so doing and paying just compensation therefor. It had the power under the statute to condemn and still has that power, which should be exercised".

We agree with that declaration. And if the day should come when, through expansion of school facilities or otherwise, plaintiffs suffer a substantial or measureable damage and prove it, this decision will not preclude their collection of damages. But we do not believe the present state of facts requires or in good conscience calls for exercise of the extraordinary power of injunction. To do so would be applying the principles of equity and exercising the Chancellor's discretion to protect a technical property right while closing our eyes to the spirit of the law and especially to the broad fundamental principles of equity jurisprudence. Considering the comparative injuries which plaintiffs suffer from withholding the injunction and those which defendants and the public would incur if it were issued, it seems to us that granting injunctive relief here would be literally straining away and saving the gnat but swallowing and permitting the camel to pass through.

The judgment and decree of the trial court granting an injunction herein is reversed and the cause is remanded with direction to enter judgment for defendants.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court. All concur.