Paul HIGDAY et al., Appellants,

v.

George NICKOLAUS et al., Respondents.

No. 25627.

Kansas City Court of Appeals,
Missouri.

June 7, 1971.

Motion for Rehearing or Transfer to Supreme Court Denied July 30, 1971.

Application to Transfer Denied
Sept. 13, 1971.

Terence C. Porter, Columbia, for appellants.

James H. Coonce, City Counselor for City of Columbia, Columbia, for respondents.

SHANGLER, Presiding Judge.

This appeal is from a judgment dismissing plaintiffs' Petition for Declaratory Judgment and Injunction. The judgment of dismissal was entered upon defendant City's Motion to Dismiss which alleged that plaintiffs' petition failed to plead either a justiciable controversy or any claim upon which relief could be granted. The questions raised on this appeal are: whether the averments of the petition entitle plaintiffs, to a judicial declaration of their rights to the percolating waters underlying their lands, and if so, whether defendant City's threatened use of the percolating waters is such an infringement of those rights as will be enjoined by equity.

The facts alleged and in substance shown by the petition of plaintiffs, now appellants, are these: Appellants are the several owners of some 6000 acres of farm land overlying an alluvial water basin in Boone County known as the McBaine Bottom. These lands (projected on Exhibit "A" appended hereto) extend from Huntsdale at the north to Easley at the south; they are bordered by a line of limestone bluffs on the east and are enclosed by a sweeping bend of the Missouri River on the west. Underlying this entire plain are strata of porous rock, gravel and soil through which water, without apparent or definite channel, filtrates, oozes and percolates as it falls. This water (much of which has originated far upstream within the Missouri River Valley) has been trapped by an underlying stratum of impervious limestone so that the saturated soil has become a huge aquifer or underground reservoir.

Appellants have devoted the overlying lands to agricultural use with excellent resultant yields. They attribute the fertility of the soil to the continuing presence of a high subterranean water level which has unfailingly and directly supplied the moisture needs of the crops whatever the vagaries of the weather. Appellants also use the underground water for personal consumption, for their livestock, and in the near future will require it for the surface irrigation of their crops.

Respondent City of Columbia is a burgeoning municipality of 50,000 inhabitants which has been, since 1948, in quest of a source of water to replenish a dwindling supply. Following the advice of consulting engineers, it settled on a plan for the withdrawal of water by shallow wells from beneath the McBaine Bottom where appellants' farms are located and thence to

transport the water to the City some twelve miles away for sale to customers within and without the City. In December of 1966, the electorate approved a revenue bond issue for the development of a municipal water supply by such a system of shallow wells in the McBaine Bottom. Further scientific analysis and measurement of the basin's water resources followed. With the aid of a test well, it was determined that the underground percolating water table, when undisturbed, rises to an average of ten feet below the soil surface. These waters move laterally through the McBaine alluvium at the rate of two feet per day and in so doing displace 10.5 million gallons of water daily.

Respondent City, by threat of condemnation, has acquired from some of these appellants five well sites[1] totalling 17.25 acres. The City now threatens to extract the groundwater at the rate of 11.5 million gallons daily for purposes wholly unrelated to any beneficial use of the overlying land, but instead, intends to transport the water to its corporate boundaries some miles away for purposes of sale. The mining of the water as contemplated will reduce the water table throughout the basin from the present average of ten feet to a new subsurface average of twenty feet. Appellants complain that this reduction of the water table will divert percolating waters normally available and enjoyed by appellants for their crops, livestock and their personal use and will eventually turn their land into an arid and sterile surface.

On the basis of these pleaded allegations, plaintiffs sought (1) a judicial declaration that defendant City is without right to extract the percolating waters for sale away from the premises or for other use not related with any beneficial ownership or enjoyment of the land from which they are taken when to do so will deprive them, the owners of the adjacent land, of the reasonable use of the underground water for the beneficial use of their own land, and (2) that defendant City be enjoined from undertaking to do so.

■■■ The propriety of the trial court's action in dismissing plaintiffs' petition without hearing evidence depends upon whether the averments of the petition " 'invoke substantial principles of law which entitled plaintiff(s) to relief' ". Pollard v. Swenson, Mo.App., 411 S.W.2d 837, 840 [4]. These substantial principles of law require that a petition invoking declaratory relief allege a state of facts which shows a subsisting justiciable controversy between the parties as to their respective rights and duties, admitting of specific relief by way of a judgment conclusive in character and determinative of the issue involved. Glick v. Allstate Insurance Company, Mo.App., 435 S.W.2d 17, 20 [1]. Plaintiffs must show that they

1. Actually, Sec. 21(e) of appellants' Petition for Declaratory Judgment and Injunction alleges that the City "intends to acquire (12) 2.34 acre sites" from them and refers to their attached Exhibit "A" as fixing the location of these twelve sites. Exhibit "A", however, locates only five sites. From the briefs and oral arguments of counsel, it is evident the City had actually acquired the well sites after the petition was filed but before the trial court ruled the City's Motion to Dismiss and that such fact was then known to counsel and to the trial court. The petition, however, was never amended to allege the actual acquisition by the City of the well sites. On this appeal, we are called upon to pass on the sufficiency of the pleadings to afford relief.

The present state of the record is confusing as to whether the City only intends to or has actually acquired the well sites—a material consideration in the determination of whether a court may act on plaintiffs' requests for relief. In the circumstances, in the interest of justice, we consider plaintiffs' petition as having been amended to allege the acquisition of the well sites, an amendment no doubt intended by plaintiffs and a fact admitted by the City. See 5 C.J.S. Appeal and Error § 1530, p. 1022. The number of well sites actually acquired can have no bearing on the issues presented on the pleadings. We have settled on 5 rather than 12 because that seems to have been the allegation ultimately intended.

have a legally protectable interest at stake and that the question they present is appropriate and ripe for judicial decision. State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S.W.2d 172, 176 [5–7]. A mere difference of opinion or disagreement or argument does not afford adequate basis for invoking the judicial power to declare rights. Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70, 72 [3, 4]. The facts on which the decision is demanded must have accrued so that the judgment declares the existing law on an existing state of facts. Borchard, Declaratory Judgments, p. 56.

In determining the sufficiency of plaintiffs' pleading as a petition for declaratory judgment, we accord it the benefit of every favorable and reasonable intendment the facts alleged will allow. Commonwealth Insurance Agency, Inc. v. Arnold Mo., 389 S.W.2d 803, 806 [1]. So construed, the petition is sufficient as a statement of a claim for declaratory relief. Unquestionably, it pleads an actual, existing and real controversy between the parties, one which has put plaintiffs in grave uncertainty as to their rights. The petition describes the defendant City as having embarked upon a course of action, subscribed by the electorate, as will ultimately and inevitably culminate in damage to plaintiffs by the permanent lowering of the water table throughout the basin with the consequent impoverishment of plaintiffs' lands. The facts pleaded show the City's design to exploit the McBaine Bottom as the principal source of the municipal water supply has advanced to the point where well sites have been acquired on land adjacent to that held by plaintiffs. (The City acknowledges in its brief that it has committed almost $5,000,000 to this project, that it has acquired the sites for wells and a water treatment plant, and that the laying of water lines is virtually completed.) When the wells become operative, the City claims the right to withdraw groundwater in any quantity at will, for sale, even though damages may result to plaintiffs. Plaintiffs deny the City has such a right. They seek a declaration that the City has an obligation to conform to a standard of beneficial use of groundwater, a use that is related to the overlying land.

Thus, the prejudice which threatens plaintiffs' interest is not hypothetical or contingent, but impending and real. It is a controversy which is ripe for determination, one susceptible of a judgment which will "affect the legal relationships of the parties" (City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W.2d 411, 414 [5]) and "declare a fixed right". Glick v. Allstate Insurance Company, 435 S.W.2d 1. c. 21 [3]. And although accomplished injury is not alleged, where a dispute as to legal rights is otherwise shown, a violation of those rights is not a precondition to the availability of declaratory adjudication. Borchard, Declaratory Judgments, p. 29. It is the distinctive function of this wholesome and ameliorative remedy to dispel uncertainty as to legal rights before actual loss has occurred thereby preserving to the parties "the opportunity for calm negotiation * * * with a view to dispensing with litigation in the case". State ex rel. United States Fire Ins. v. Terte, 351 Mo. 1089, 176 S.W.2d 25, 31 [9].

It is the position of respondent City, however, that the petition shows on its face appellants have no legal right which is subject to the infringement by respondent and in the absence of such a demonstrably legally protectable interest, no justiciable controversy exists and no declaratory relief may be rendered. Respondent maintains that since Springfield Waterworks Co. v. Jenkins, 62 Mo.App. 74, was decided by the St. Louis Court of Appeals in 1895, Missouri has recognized the common law rule that a landowner has absolute ownership to the waters under his land and, therefore, may without liability withdraw any quantity of water for any purpose even though the result is to drain all water from beneath his neighbors' lands. Therefore, contends respondent, since the threatened damage plaintiffs

plead describes a consequence of the rightful use by respondent of its land, it is *damnum absque injuria* and not actionable. However "(i)t is not the function of this court on appeal from a judgment of dismissal to make an analysis of the law under which the rights are claimed or to determine whether plaintiff is entitled to the declaratory relief he seeks in accordance with the theory he states". Pollard v. Swenson, 411 S.W.2d l.c. 842 [13, 14]; City of Creve Coeur v. Creve Coeur Fire Pro. Dist., Mo., 355 S.W.2d 857, 859 [7]. If under the facts pleaded plaintiffs are entitled to declaration of rights at all, the petition is sufficient to that purpose even though it advances a mistaken contention of law. Transport Mfg. & Equip. Co. v. Toberman, Mo., 301 S.W.2d 801, 805 [1]. And plaintiffs' standing to claim declaratory relief—and to assert a legally protectable interest—is not impaired by the probability that ultimately they will not prevail. 22 Am.Jur.2d, Declaratory Judgments, Sec. 79, p. 962. Only if it appears that it may be said with certainty that no possible basis exists for plaintiffs' contention that they are entitled to a declaration of rights and duties under the facts alleged should the petition be dismissed and plaintiffs denied the opportunity to prove by evidence their right to relief. City of Creve Coeur v. Creve Coeur Fire Pro. Dist., l.c. 860.

Simply stated, plaintiffs allege that defendant City claims right to their groundwater and threatens to use it in such a manner as will injure plaintiffs. Plaintiffs ask if, under the circumstance, the City may do so lawfully. This aspect of plaintiffs' action is in the nature of a suit to quiet title to water rights (In re Bear River Drainage Area, 2 Utah 2d 208, 271 P.2d 846, 848 [2]) and is a use to which the declaratory judgment remedy has been aptly applied. Borchard, Declaratory Judgments, p. 749; 2 Anderson, Declaratory Judgments, pp. 1354 and 1362. Applying the precepts we have examined, it is clear these averments invoke substantial principles of law which entitle plaintiffs to some relief. The issue raised affects the legal interest of plaintiffs, an interest which the trial court should have protected by an appropriate declaration, after an evidentiary hearing, thereby relieving plaintiffs of their uncertainty. It was error for the trial court to have denied plaintiffs an evidentiary hearing on their allegations for declaratory relief.

The effect of the court's judgment of dismissal entered upon respondent's Motion to Dismiss was not only to determine that the petition raised no justiciable controversy but also that it did not state a claim for injunctive relief. Since a motion to dismiss concedes the truth of all facts well pleaded (Dowdy v. Lincoln Nat. Life Ins. Co., Mo.App., 384 S.W.2d 282, 286 [6]), the propriety of the trial court's judgment is to be tested in the perspective of that concession.

It is fundamental that injunction will not be granted unless there is some substantial right to be protected. Humphreys v. Dickerson, Mo., 216 S.W.2d 427, 429 [5]; 43 C.J.S. Injunctions § 19b, p. 430. The indispensable basis for injunctive relief is the wrongful and injurious invasion of some legal right existing in plaintiff. Howe v. Standard Oil Co. of Indiana, Mo.App., 150 S.W.2d 496, 497 [1]; 42 Am.Jur.2d, Injunctions, Sec. 29, p. 765. The writ will issue also if invasion of that right is threatened by one having the power to do the wrong. Ewing v. Kansas City, Mo., 238 Mo.App. 266, 180 S.W.2d 234, 240 [1–3]; Sec. 526.030, V.A.M.S. Whether plaintiffs' allegations that the defendant municipality threatens to capture the percolating waters from their subjacent lands for purposes of sale in such quantities as will damage them describe an invasion of legal right which equity will enjoin depends upon whether plaintiffs have a right of property in these waters. The answer to that question, in turn, depends upon the rule to be applied to the ownership and use of subterranean percolating waters.

 In legal contemplation, subterranean waters fall into two classifications, either underground streams or percolating waters.[2] An underground stream is defined as water that passes through or under the surface in a definite channel or one that is reasonably ascertainable. Percolating waters include all waters which pass through the ground beneath the surface of the earth without a definite channel and not shown to be supplied by a definite flowing stream. They are waters which ooze, seep, filter and otherwise circulate through the interstices of the subsurface strata without definable channel, or in a course that is not discoverable from surface indications without excavation for that purpose, 93 C.J.S. Waters § 86; 56 Am.Jur., Waters, Secs. 108, 111; Farnham, Water and Water Rights, Sec. 944. The rule is that all underground waters are presumed to be percolating and therefore the burden of proof is on the party claiming that a subterranean stream exists. Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co., 39 Ariz. 65, 4 P.2d 369, 376 [18]; C & W Coal Corp. v. Salyer, 200 Va. 18, 104 S.E.2d 50, 53 [1]; Wilkening v. State, 54 Wash.2d 692, 344 P.2d 204, 206 [2].

 The law with respect to rights in percolating waters was not developed until a comparatively recent period.[3] Under the English common law rule, percolating waters constitute part and parcel of the land in which they are found and belong absolutely to the owner of such land who may without liability withdraw any quantity of water for any purpose even though the result is to drain all water from beneath the adjoining lands. 93 C.J.S. Waters § 93c (2); 56 Am.Jur., Waters, Sec. 113, 1 R. Clark, Waters and Water Rights, Sec. 52.-2(B), and see 55 A.L.R. 1390 and supplementary 109 A.L.R. 397 (both annotations state the English rule and list the cases which follow it). Under this rule, a municipality owing land may collect the underlying percolating waters and use them to supply its inhabitants regardless of the effect on adjoining landowners. Warder v. Springfield, 9 Ohio Dec. Reprint 855, 17 Weekly Law Bul. 398 (1887); City of Corpus Christi v. City of Pleasanton, 154 Tex. 289, 276 S.W.2d 798, 802 [1]; III Farnham, Waters and Water Rights, p. 2717.

The English rule relating to percolating groundwater was generally followed by American courts through the mid-nineteenth century, although not always with the full rigor of the absolute ownership doctrine. At an early day, the courts expressed dissatisfaction with the English common law rule and began applying what has come to be known variously, as the rule of "reasonable use", or of "correlative rights", or the "American rule."[4] By the turn of the century, a steady trend of decisions was discernible away from the Eng-

---

2. These legal classifications have been roundly criticized by hydrologists and legal commentators as without scientific basis both as to the distinction attempted between percolating waters and underground streams and also because they ignore the essential interrelationship between surface and ground waters. See, e. g., Danielson, Ground Water in Nebraska, 35 Neb.L.Rev. 17 (1955); Clark, Groundwater Management: Law and Local Response, 6 Ariz.Law Rev. 188 (1965); 1 R. Clark, Waters and Water Rights, Sec. 3.1, p. 332 (1967), Also, Restatement, Torts, comment a to Sec. 858 (1939); Lauer, Reflections on Riparianism, 35 Mo.L.Rev. 1, 7 (1970).

3. Acton v. Blundell, 12 Mees & W. 324, 152 Eng.Rep. 1223 (Exch.1843), 15 Mor. Min.Rep. 168, is generally cited as establishing the doctrine, but an earlier American decision, Greenleaf v. Francis, 35 Mass. (18 Pick) 177 (1836) had reached much the same result. See: Hutchins, Symposium on Water Law, 5 U.Kans.L. Rev. 533, 541 (1957).

4. This rule originated in 1862 when the New Hampshire Supreme Court in Bassett v. Salisbury Mfg. Co., 43 N.H. 569, 573, 82 Am.Dec. 179 (1862) rejected the doctrine of absolute ownership of percolating waters and adopted a rule of reciprocal reasonable use.

lish rule to a rule of reasonable use.[5] The trend continues.[6]

 Generally, the rule of reasonable use is an expression of the maxim that one must so use his own property as not to injure another—that each landowner is restricted to a reasonable exercise of his own rights and a reasonable use of his own property, in view of the similar rights of others. 55 A.L.R. 1400; III Farnham, Water and Water Rights, pp. 2718, 2719; 73 C.J.S. Property § 13(b); Clutter v. Blankenship, 346 Mo. 961, 144 S.W.2d 119, 121 [3, 4]. As it applies to percolating groundwater, the rule of reasonable use recognizes that the overlying owner has a proprietary interest in the water under his lands, but his incidents of ownership are restricted. It recognizes that the nature of the property right is usufructuary rather than absolute as under the English rule.[7] Under the rule of reasonable use, the overlying owner may use the subjacent groundwater freely, and without liability to an adjoining owner, but only if his use is for purposes incident to the beneficial enjoyment of the land from which the water was taken. This rule does not prevent the consumption of such groundwater for agriculture, manufacturing, irrigation, mining or any purpose by which a landowner might legitimately use and enjoy his land, even though in doing so he may divert or drain the groundwater of his neighbor. Kinney on Irrigation (2 ed.) Sec. 1192; 93 C.J.S. Waters § 93(3); 56 Am.Jur., Waters, Sec. 117; 55 A.L.R. 1398(b) (1) and cases there cited.

 The principal difficulty in the application of the reasonable use doctrine is in determining what constitutes a reasonable use. What is a reasonable use must depend to a great extent upon many factors, such as the persons involved, their relative positions, the nature of their uses, the comparative value of their uses, the climatic conditions, and all facts and circumstances pertinent to the issues. Bristor v. Cheatham, 75 Ariz. 227, 255 P.2d 173, 179 [17] (1953); Bollinger v. Henry, Mo., 375 S.W.2d 161, 166 [9, 10] (1964).[8] However, the modern decisions agree that under the rule of reasonable use *an overlying owner, including a municipality, may not withdraw percolating water and transport it for sale or other use away from the land from which it was taken if the result is to impair the supply of an adjoining landowner to his injury.* Such a use is unreasonable because non-beneficial and "is not for a 'lawful purpose within the general rule concerning percolating waters, but constitutes an actionable wrong for which damages are recoverable' ". Bristor v. Cheatham, 255 P.2d l. c. 178 [13, 14]; Canada v. City of Shawnee, 179 Okl. 53, 64 P.2d 694, 697 [3]; Forbell v. City of New York, 164 N.Y. 522, 58 N.E. 644, 646; Rothrauff v. Sinking Spring Water Co., 339 P. 129, 14 A.2d 87, 90; Meeker v. City of East Orange, 77 N.J.Law 623, 74 A. 379, 385, 25 L.R.A.(N.S.) 465; 134 Am. St.Rep. 798; and cases listed in 55 A.L.R. 1404.

The "reasonable use" rule as developed in the law of ground waters must be distinguished from the "correlative rights" rule. In 1902, the California Supreme Court repudiated the English common law rule in favor of the distinctive correlative rights doctrine which is based on the theo-

5. 2 Wiel, Water Rights in the Western States, p. 973 (3d ed. 1911).

6. Rothrauff v. Sinking Spring Water Co., 339 Pa. 129, 14 A.2d 87, 90; City of Corpus Christi v. City of Pleasanton, 154 Tex. 289, 276 S.W.2d 798, 801.

7. 1 Wiel, "The Usufruct of the Natural Resource", ch. 2, pp. 14–21; Sherred v. City of Baker, 63 Or. 28, 125 P. 826 (1912); Williams v. City of Wichita, 190 Kan. 317, 374 P.2d 578, 584–589 (1962).

8. Bollinger v. Henry, supra, suggests certain factors in the determination of the reasonableness of a use of riparian waters. Secs. 852 and 861 of the Restatement of the Law of Torts (1939) state that the problem of determining a reasonable use is the same whether water is in a water course or lake or under the surface of the earth.

ry of proportionate sharing of withdrawals among landowners overlying a common basin.[9] Under the doctrine, overlying owners have no proprietary interest in the water under their soil. California remains the only important correlative rights state; Utah has abandoned it, and only Nebraska also applies it to some extent.[10] The administration of such a system of rights has proved extremely difficult in times of water shortage and has tendered towards an "equalitarian rigidity" which does not take into account the relative value of the competing uses.[11] However suitable this doctrine may be for California—the prime consumer of ground water in the country—or any other state which may follow it, the reasonable use rule offers a more flexible legal standard for the just determination of beneficial uses of ground water, particularly under the climatic conditions of Missouri.

Respondent City contends that the English common law rule of absolute ownership of percolating waters governs in Missouri by virtue of statute and judicial decision. The City seems to suggest that since the Territorial Laws of 1816 adopted the common law as the rule of action and decision in this state and present Sec. 1.010 V. A.M.S. continutes that legislative policy, we have no power to change or abrogate it. As we have already noted, Acton v. Blundell (marginal reference 3, supra), which is generally cited as having established the "English common law" rule of percolating waters, was decided in 1843 long after the Territorial Laws of 1816 were enacted. And not until 1860 was it decided that, without liability to an adjoining owner, an overlying owner might exhaust the groundwater to furnish a municipal water supply.[12] Thus, there was no

law of any kind on the subject at the time the common law was adopted by statute in this state. The subsequent English decisions declaring the common law on percolating waters are no more binding on us than the decisions of any court of another state. There is no impediment of inherited doctrine to our determination of the question presented according to the justice of the case.

The Missouri law of groundwater rests on a single case, Springfield Waterworks Company v. Jenkins, 62 Mo.App. 74, decided by the St. Louis Court of Appeals in 1895. Respondent City contends the holding in that case "reaffirms the English or Common Law Rule as to percolating waters and (that) this is the final word in Missouri on the subject." In that case, plaintiff water company owned land upon which a spring was located. The water from this spring was forced into a reservoir, stored there, and eventually sold to the City of Springfield. On an adjoining tract, defendants had dammed the flow of several springs into a pond. Plaintiff's spring was fed by the seepage of the water falling on defendants' land. Defendants drained the pond repeatedly during periods of drought thereby diverting the seepage and diminishing the flow of plaintiff's spring. Plaintiff sought to enjoin defendants from interfering with its groundwater supply. It contended, alternatively, that the water which fell through the ground from defendants' springs found its way into well defined subterranean channels leading into its spring and, thus, defendants' impoundage of the springs diverted the flow of a subterranean water course. Plaintiff also alleged that defendants acted maliciously and for the sole purpose of injuring plaintiff.

9. Katz v. Walkinshaw, 141 Cal. 116, 74 P. 766 (1902).

10. 1 R. Clark, Water and Water Rights, Sec. 52.2(B), p. 331.

11. Harnsberger, Nebraska Ground Water Problems, 42 Neb.L.Rev. 721, 753 (1963); Clark, Groundwater Management: Law

and Local Response, 6 Ariz.L.Rev. 178, 185 (note 36 (1965)).

12. New River Co. v. Johnson, 2 El. & El. 435, 29 L.J.Mag.Case. N.S. 93, 6 Jur. N.S. 374, 1 L.T.N.S. 295, 8 Week.Rep. 179. See: III Farnham, Waters and Water Rights, p. 2718.

The court acknowledged that it would be unlawful to interfere with the natural flow of water—including that of a subterranean stream—moving in a well defined channel, but concluded that whether the water reached plaintiff's spring by means of such a channel or by means of percolation remained a matter of conjecture under the evidence and therefore refused relief on that theory. In so deciding, the court delivered itself of this dictum (l. c. 80):

"(Percolating) water is regarded as a part of the soil and to which an adjoining proprietor has no absolute or natural right. It belongs to the owner of the land, and *its diversion and appropriation by him for the improvement or benefit of his estate can not be made the basis for complaint against him* by anyone, however grievous the resulting injury may be. Wheatley v. Baugh, 25 Pa.St. 528; Roath v. Driscoll, 20 Conn. 533; Chatfield v. Wilson, 28 Vt. 49; Greenleaf v. Francis, 18 Pick. 117; Chasemore v. Richards, 5 H. & N. 982; Haldeman v. Bruckhardt, 45 Pa.St. 514; Whetstone v. Bowser, 29 Pa.St. 59." (Emphasis supplied)

As against defendants' contention that they had the right to divert the percolating water found on their land to the injury of an adjoining owner, even when done with a bad motive, the court replied (l. c. 82):

"While it must be conceded that * * * defendants must be regarded as the general owner of the surplus water flowing from their spring, *such ownership is not without restrictions against the plaintiff, for it, by reason of its appropriation, has acquired a right thereto which can not be interfered with* by a stranger, nor *by the defendants, except for some beneficial use of the water or for the betterment of their land.* The defendants cannot obstruct or divert the water merely for the purpose of injuring the plaintiff." (Emphasis supplied)

Although the cases cited by the court in support of its decision and dictum are usually classified as adhering to the common law rule of absolute ownership of percolating waters, the court's language (excerpted and stressed) recognizes the limitation of reasonable use—that the landowner may not divert the underlying groundwater to the injury of his neighbor unless it be for some use or benefit to the land from which it was taken. We do not share respondent City's confidence that this decision either announces or follows the common law doctrine on the subject. Particularly, since the court's decision could have been reached by the application of either the rule of reasonable use or under a generally recognized modification of the common law rule, each of which forbids a landowner from maliciously cutting off the underlying groundwater to the damage of an adjoining owner. (1 R. Clark, Waters and Water Rights, p. 72; 56 Am.Jur., Waters, Sec. 121; 93 C.J.S. Waters § 94. Clinchfield Coal Corp. v. Compton, 148 Va. 437, 139 S.E. 308, 55 A.L.R. 1376, 1383.

The intervening three-quarters of a century since Springfield Waterworks Company v. Jenkins, supra, has seen for Missouri a significant urban, industrial and population increase and with it greater demands upon a relatively static water supply.[13] In the past such water disputes as have been brought to our courts usually have arisen "from factual situations pertaining to the existence of too much rather than too little water". Bollinger v. Henry, 375 S.W.2d

---

13. The 1970 Advance Census Report published December, 1970 by the United States Department of Commerce, Bureau of the Census shows the population of the state of Missouri as 4,677,399 (as compared to 3,106,665 in 1900), and the population of Columbia, Missouri as 58,-804—rather than the pleaded 50,000 (as compared to 5,651 in 1900). We are also informed by letter from the Water Resources Board of Missouri that studies for the Missouri Basin and Upper Mississippi Basin are scheduled for publication in January, 1972. These studies show that agricultural and industrial uses of water will continue to increase materially so that firm conservation policies have become imperative.

l. c. 165 [7]. The controversy between respondent City and plaintiffs over the McBaine Bottom groundwater, however, is prompted by a scarcity, not an excess, of water to supply the vital needs of both. It is a competition which is destined to recur between other municipalities and landowners as present sources of municipal water supplies diminish and the need for them increases. In such circumstances, appeals to a dogma of absolute ownership of groundwater without consideration of the rights of adjoining landowners seem unpersuasive.

Also, since Springfield Waterworks v. Jenkins, supra, the science of groundwater hydrology has come into existence and has proven the postulates of the common law rule to be unsound. The premise that the owner of the soil owns all that lies beneath the surface so that he may use the percolating water in any way he chooses without liability to an adjoining owner fails to recognize that the supply of groundwater is limited, and that the first inherent limitation on water rights is the availability of the supply.[14] Another postulate of the common law doctrine ascribes to percolating waters a movement so "secret, changeable and uncontrollable", that no attempt to subject them to fixed legal rules could be successfully made. Chatfield v. Wilson, 28 Vt. 49, 53 (1855); Frazier v. Brown, 12 Ohio St. 294 (1961). Modern knowledge and techniques have discredited this premise also. The movement, supply, rate of evaporation and many other physical characteristics of groundwater are now readily determinable. In fact, respondent City's decision to turn to the McBaine Bottom as the source of its water supply was made only after careful scientific analysis confirmed that this land was particularly adaptable for water production. At the time the City acquired the well and water treatment sites, it had full knowledge of the dimensions of the underlying aquifer, the volume of groundwater it contained, the daily rate of recharge, the direction and rate of flow, the normal water level and, at the rate of capture contemplated by the City, the level to which the groundwater would be lowered. The City cannot be permitted to escape liability by appeals to a doctrine which assumes that the very information the City has acted upon was not available to it. See Forbell v. City of New York, 58 N.E. l. c. 645 (1900).

Recently, in Bollinger v. Henry, supra, 375 S.W.2d l. c. 166 [9, 10] (1964) the Supreme Court of Missouri applied the rule of reasonable use to determine the rights of riparian owners. Subterranean streams are governed by the rules applying to natural watercourses on the surface, so the rule of reasonable use is now applicable to them also. 93 C.J.S. Waters § 89; 56 Am.Jur., Waters, Sec. 109; Springfield Waterworks Co. v. Jenkins, 62 Mo.App. l. c. 80. We believe the same rule should apply to subterranean percolating waters. Jones v. Oz-Ark-Val Poultry Company, 228 Ark. 76, 306 S.W.2d 111, 113 [2, 3] (1957); Wrathall v. Johnson, 86 Utah 50, 40 P.2d 755, 776 [13] (1935). It is that legal standard, in absence of a statutory expression of a priority of uses,[15] by which existing water resources may be allocated most equitably and beneficially among competing users, private and public. The application of such a uniform legal standard would also give recognition to the established interrelationship between surface and groundwater and would, therefore, bring into one classifica-

---

14. 1 R. Clark, Waters and Water Rights, Secs. 2.1–2.5. 16 Rocky Mountain Mineral Law Institute (1970) p. 114. Lauer, Reflections in Riparianism, 35 Mo.L.Rev. 1, 2 (1970).

15. "Missouri is notable for the fact that it has almost no statutory law concerning rights of individual members of the public and the public generally in public waters and watercourses * * *". Bollinger v. Henry, Mo., 375 S.W.2d 161, 165 [7, 8] (1964). But see: Model Water Use Act (1958); also Levi, Highest and Best Use: An Economic Goal for Water Law, 34 Mo.L.Rev. 165 (1969).

tion all waters over the use of which controversy may arise.

Under the rule of reasonable use as we have stated it, the fundamental measure of the overlying owner's right to use the groundwater is whether it is for purposes incident to the beneficial enjoyment of the land from which it was taken. Thus, a private owner may not withdraw groundwater for purposes of sale if the adjoining landowner is thereby deprived of water necessary for the beneficial enjoyment of his land. Katz v. Walkinshaw, 141 Cal. 116, 74 P. 766, 64 L.R.A. 236, 99 Am.St.Rep. 35 (1902). Here, the municipality has acquired miniscule plots of earth and by the use of powerful pumps intends to draw into wells on its own land for merchandising groundwater stored in plaintiffs' land, thereby depriving plaintiffs of the beneficial use of the normal water table to their immediate injury and to the eventual impoverishment of their lands. "There is no apparent reason for saying that, because defendant is a municipal corporation, seeking water for the inhabitants of a city, it may therefore do what a private owner of land may not do. The city is a private owner of this land, and the furnishing of water to its inhabitants is its private business. It is imperative that the people of the city have water; it is not imperative that they secure it at the expense of those owning lands adjoining lands owned by the city." Schenk v. City of Ann Arbor, 196 Mich. 75, 163 N.W. 109, 114 [2] (1917); Canada v. City of Shawnee, 64 P.2d 1. c. 698 [4] (1937); see also, 93 C.J.S. Waters p. 765. Under the rule we apply, however, plaintiffs could have no basis for complaint if the City of Columbia's withdrawals of groundwater for municipal purposes from the McBaine Bottom do not interfere with plaintiffs' beneficial use of such water. Jarvis v. State Land Dept., City of Tucson, 104 Ariz. 527, 456 P.2d 385, 7 [1] (1969); 93 C.J.S. Waters § 93(3). Under the facts pleaded, the water table could be maintained at its normal level and damage to plaintiffs avoided if the City were to limit its withdrawals to such quantity as would not exceed the daily recharge rate of 10.5 million gallons. If, on the other hand, the City perseveres in its declared intention to mine the water by at least one million gallons per day, it will become accountable to plaintiffs for whatevery injury results from such diversion.

We have concluded that the pleaded averments of plaintiffs' petition raise in plaintiffs a property right to the reasonable use of the percolating waters underlying their lands, which right is shown to be threatened with wrongful and injurious invasion by the defendant City. Generally, a basis is made out of equity's interference by injunction to prevent the wrongful diversion of percolating waters by a pleading which establishes plaintiff's "right to the use of the water, that he has suffered or will suffer, legal injury, that the acts of defendant are the cause of plaintiff's injury, that the injury, present or threatened, is irreparable, and that no adequate redress can be obtained in an action at law". 93 C.J.S. Waters § 100; 56 Am.Jur., Waters, Sec. 129. And a petition, such as that of plaintiffs, which pleads an appropriation of private property for a public purpose without authority or without compliance with the constitutional or statutory conditions on which the right to make the appropriation is given describes such an invasion of private rights as may be assumed to be irremediable. Such a wrong will be enjoined without the customary requirements of equitable jurisdiction, and more particularly, without regard to the questions of irreparable damage or the existence of a legal remedy which may afford a money compensation. Gunn v. City of Versailles, Mo.App., 330 S.W.2d 257, 262 [8, 9]; Walther v. City of Cape Girardeau, 166 Mo.App. 467, 149 S.W. 36, 41–42 [8]; 30 C.J.S. Eminent Domain § 401, pp. 489–490; 6 Nichols, Eminent Domain, Sec. 28.22 [1], p. 628. Plaintiffs' pleadings were sufficient to invoke the trial court's equitable

jurisdiction to consider the request for injunctive relief thereby presented.

 This is not to suggest that should proof follow upon the pleadings, perforce injunction will issue. Injunctive relief is a matter of grace, not of right. "The writ of injunction is an extraordinary remedy. It does not issue as a matter of course, but somewhat at the discretion of the chancellor. It is his duty to consider its effect upon all parties in interest, and to issue it only in case it is necessary to protect a substantial right, *and even then not against great public interest.*" (Emphasis supplied) Smith v. City of Sedalia, 244 Mo. 107, 149 S.W. 597, 601 [3]; Johnson v. Independent School Dist. No. 1, 239 Mo.App. 749, 199 S.W.2d 421, 424 [2]; 43 C.J.S. Injunctions § 31. It requires the application of the principles of equity under all the circumstances. "The relative convenience and inconvenience and the comparative injuries to the parties and to the public should be considered in granting or refusing an injunction." Rubinstein v. City of Salem, Mo.App., 210 S.W.2d 382, 386; 42 Am.Jur.2d, Injunctions, Sec. 56. This rule has been applied where " 'the allowance of an injunction would seriously interfere with or work detriment to public works or works of public benefit, where the issuance of the injunction asked would result in cutting off the water supply' " to the public harm. Barber v. School District No. 51, Clay County, 335 S.W.2d 527, 530 [3]; 43 C.J.S. Injunctions § 31, p. 466. "(A)nd, where the result of such public injury is so great on the one hand as compared to the injury complained of on the other, then it would be unconscionable to grant injunctive relief, and it will be denied." Horine v. People's Sewer Co., 200 Mo.App. 233, 204 S.W. 735, 736 [1, 2]. And this is so, even though the available remedy at law is not adequate. Johnson v. Independent School Dist. No. 1, 199 S.W.2d l. c. 424 [2].

The rule of comparative injury suggests that under the facts pleaded and conces-

sions of counsel it may be more equitable to deny injunctive relief than to grant it. The evidence may prompt the trial chancellor to the same conclusion, but that must await the determination of existing circumstances. To be sure, the rights plaintiffs seek to preserve are substantial and may not be treated cavalierly, but they are to be weighed against "the immeasurable value of the health and welfare of the public". Horine v. People's Sewer Co., 204 S.W. 1. c. 736. Few things are more vital or of such surpassing importance to the public well-being than the assurance of a wholesome water supply. At the time this appeal was submitted, the development of the City's water treatment and distribution system was nearing completion. Perhaps by now it has become operative. The evidence may also disclose, as the pleadings do not, whether the McBaine Bottom is intended to supplement the City's present source of water or to supplant it. Nor do we know the full extent of the City's financial commitment to the project. These and other factors will guide the trial chancellor in deciding whether to impose its restraint upon the City and in doing so, he will be mindful that "the public convenience and public mischief may mark the distinction between sound and unsound discretion in granting an injunction". Johnson v. United Rys. Co. of St. Louis, 227 Mo. 423, 127 S.W. 63, 71.

The City has resisted plaintiffs' requested declaratory and injunctive relief on the theory that the common law rule of absolute ownership of percolating waters has governed its relationship with plaintiffs and, therefore, any damage to them could not be a legal injury. It has not sought to exercise its power of eminent domain to acquire the right to withdraw water from beneath plaintiffs' lands doubtless on the premise that it was under no duty to do so. Should the trial court adjudge that plaintiffs are entitled to the declarations they seek, the rule of reasonable use will apply and defendant City will be answerable to plaintiffs for any damage from its unrea-

sonable use of groundwater. Should the trial court adjudge injunctive relief for plaintiffs appropriate, it would be well within its discretion to condition the imposition of that restraint upon the exercise by the City within a reasonable time, of its power of eminent domain to acquire the water rights it has been violating. Failing that, plaintiffs would still have available to them a remedy in the nature of an inverse condemnation for any damage caused by the City's unreasonable use.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with the views we have expressed.

All concur.